UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID ZAIRE,

                                                 Plaintiff,

      vs.                                                           9:03-CV-6
                                                                       (S.J. McAvoy)

DONALD SELSKY,

                                                 Defendant.
_____

APPEARANCES                                         OF COUNSEL

DAVID ZAIRE
Plaintiff pro se

ELIOT SPITZER                                 MARIA MORAN
Attorney General of the                 Asst. Attorney General
State of New York
Attorney for defendants

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this amended civil rights complaint, plaintiff alleges that defendant retaliated against plaintiff after plaintiff wrote a letter to the New York State Commission on Correction, seeking redress for the facility's alleged failure to enforce the indoor smoking policy. (Dkt. No. 15). Plaintiff seeks substantial monetary relief.

Presently before the court is plaintiff's motion for summary judgment pursuant to FED. R. CIV. P. 56 and defendant's cross-motion for the same relief. (Dkt. Nos. 21-

24 and 29). Plaintiff has responded in opposition to defendant's cross-motion. (Dkt. No. 30). For the following reasons, this court agrees with defendant and will recommend dismissal of the complaint.

## DISCUSSION

**1.     Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id. See also Burt Rigid Box v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002)(citations omitted).

**2.     Facts**

The facts are undisputed that while incarcerated at Franklin Correctional Facility, plaintiff wrote a letter to Mr. Fred Lamy of the New York State Commission

on Correction, complaining that the prison officials at Franklin Correctional Facility were failing to provide the inmates a legally mandated "smoke-free environment." Defendant's Ex. A at 2 (copy of plaintiff's letter). In the letter, plaintiff outlined all the violations of the Indoor Clean Air Act that were occurring in the prison facilities, and which allegedly violated plaintiff's Eighth Amendment rights. *Id.* The letter also stated that the situation had come to the point "where physical confrontation between myself and these violators ... becomes inevitable." *Id.* at 3.

    Plaintiff also stated that he was advising Mr. Lamy that

> "[a]s a result of my grievance complaints and my diminishing patience, ... *that I will not be held liable for any efforts that I may find necessary to resort to upon being confronted* by any inmate who may become aware of my complaints and take exception thereto, or those who continue to show disregard and disrespect for my health by continuing to expose me to the toxic fumes that they spread throughout these confined areas ... . *Unfortunately, it usually takes a serious episode of violence before officials acknowledge the many red flags that foretold the event*."

*Id.* (emphasis added). On March 2, 2001, plaintiff was issued a misbehavior report based, not on the letter itself, but upon the wording of the letter that prison officials believed could be interpreted as a threat of violence by plaintiff. Defendant's Ex. A at 1. Plaintiff was specifically charged with a violation of Rule 102.10, which states that "[i]nmates shall not, under any circumstances, make any threat, spoken, in writing, or by gesture." Defendant's Exs. A & B. This rule is contained in the Standards of

3

Inmate Behavior for all institutions. Defendant's Ex. B.

A disciplinary hearing was held against plaintiff on March 6, 2001. On March 8, 2001, the hearing officer found plaintiff guilty of the charge. Defendant's Ex. C at 1. The hearing officer found that the plaintiff's letter implied a threat of violence by plaintiff. *Id.* at 2. The hearing officer sentenced plaintiff to twelve months keeplock with six months of that time suspended, together with a deprivation of various privileges for the same amount of time. Defendant's Ex. C at 1.

Plaintiff appealed the guilty finding, complaining that the hearing officer had misquoted and misinterpreted plaintiff's letter, and that no threats were intended. Defendant's Ex. D. In response to plaintiff's appeal, defendant Selsky reduced plaintiff's sentence to three months keeplock and deprivation of the same privileges also for a three month period, with no suspended penalty. Defendant's Ex. E. Plaintiff then filed an Article 78 proceeding in New York State Supreme Court, Franklin County, challenging the disciplinary finding. Defendant's Ex. F. On December 12, 2001, the New York State Supreme Court transferred plaintiff's action to the Appellate Division, Third Department. *Id.*

On May 8, 2002, the attorney for respondent in plaintiff's state court action wrote a letter to the Clerk of the Third Department, stating that respondent would not be filing a brief because plaintiff's disciplinary hearing had been "administratively reversed", and that the case should be dismissed as moot because plaintiff received all

the relief to which he was entitled. Defendant's Ex. F at 2. Plaintiff was sent a notice by defendant Selsky, stating that plaintiff's disciplinary determination of March 8, 2001 had been reviewed and administratively reversed on May 3, 2002. Defendant's Ex. G.

On May 6, 2002, a memorandum was sent from Deborah Jarvis, Inmate Records Coordinator at Clinton Correctional Facility to various individuals, including the First Deputy Superintendent; the Deputy Superintendent of Security; the Deputy Superintendent of Programs; Senior Corrections Counselor; Senior Parole Officer; Tier III Office; Hearing Officer; and Inmate Accounts. Defendant's Ex. H. The subject of the memorandum was the expungement of the record of plaintiff's March 8, 2001 disciplinary finding. *Id.*

Plaintiff also brought a case in the New York Supreme Court in Albany County challenging a parole determination and claiming *inter alia* that the Parole Board should consider that the March 8, 2001 disciplinary infraction had been expunged from his records. Defendant's Ex. I at 1-2. The County Court found that the reversal of one of plaintiff's disciplinary infractions subsequent to the Parole Board's decision[1] did not necessitate a reversal of the denial of parole. Defendant's Ex. at 5. The court pointed out that plaintiff had *five* disciplinary infractions subsequent to his previous

---

[1] According to the court's decision, the plaintiff's Parole Board decision was dated March 4, 2002. Plaintiff's disciplinary reversal was not dated until May 3, 2002.

5

appearance before the Parole Board. *Id.* A reading of the rest of the court's opinion shows that there were various other reasons for denying plaintiff parole that had nothing to do with this one disciplinary infraction. *Id.* In fact, the court specifically stated that "the expungement of one infraction would be insufficient to warrant the petitioner's release on parole- ***when considering all of the other factors relied upon by the Parole Board in denying petitioner discretionary parole release***." *Id.* (emphasis added).

Plaintiff sues only defendant Selsky in this action. Defendant Selsky is the Director of Special Housing\Inmate Disciplinary Programs and works in Albany, not at any particular facility. Plaintiff has not named either the officer who issued the misbehavior report or the hearing officer who found plaintiff guilty of the charge. The court notes that the amended complaint lists *four* causes of action. Amended Complaint at pp.5-6. However, a review of the last three causes of action shows that they are not separate constitutional claims, but deprivations that allegedly occurred as a result of the disciplinary finding.

**3.     Retaliation**

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir.

6

2003)(citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997). The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)).[2]

The court in *Dawes* stated that in order to survive **summary dismissal**, the plaintiff's "non-conclusory" allegations must establish

> (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action.

239 F.3d at 492 (citations omitted). Although defendant argues that the retaliatory action must also have chilled plaintiff's exercise of his First Amendment rights, subsequent Second Circuit cases have held that, in a prison context, all that is required is that the adverse conduct by defendant would have deterred a similarly situated individual of ordinary firmness from exercising his First Amendment rights. *See Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004). In *Gill*, the court held that this

---

[2] The court would note that *Dawes* did not create a "heightened pleading standard", and to the extent that it did create such a standard, the Second Circuit held that *Dawes* was inconsistent with *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). *See Phelps v. Capnolas*, 308 F.3d 180, 187 (2d Cir. 2002). The decision in *Phelps* resulted from a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6), and the court was considering only the face of the complaint. This case comes before the court upon cross-motions for summary judgment, and both parties claim no genuine issues of material fact, thus, this case is distinguishable from a situation in which only the complaint is being examined.

objective test applied, even where a particular plaintiff was ***not subjectively deterred***, even where the particular plaintiff continued to file grievances and lawsuits *Id*.

Finally, even if plaintiff can show that plaintiff's protected conduct was a motivating factor in the defendant's adverse action, defendant may evade liability by showing that plaintiff would have been disciplined even in the absence of the protected conduct. *Bennett*, 343 F.3d at 137 (citing *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

In this case, defendant argues that plaintiff has not even met his burden to show that the letter in question was protected activity, and even if the writing the letter itself were considered to be protected, plaintiff has not shown that he would not have been disciplined even in the absence of the protected conduct.  The court would first point out that plaintiff is suing only Donald Selsky.  Defendant Selsky was not the charging officer, and was not the hearing officer who found plaintiff guilty of the misbehavior. Defendant Selsky was involved with plaintiff's case to the extent that he reviewed plaintiff's guilty finding and affirmed the finding while reducing the penalty.  He later reversed the disciplinary finding. Defendant's Exs. E and G.  Thus, defendant Selsky's only involvement in the allegedly retaliatory action was his affirmance of the hearing officer's decision.

**A.  Protected Activity**

First, defendant argues that plaintiff's letter to Mr. Lamy was not protected

8

activity. It is well-settled that letters of complaint to prison officials, including formal and informal grievances *are* considered constitutionally protected activity. *See Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988)(inmates have a constitutional right of access to both administrative and judicial fora for the purpose of seeking redress of grievances). It is also well-settled, however, that threats of violence do *not* fall within the category of speech protected by the First Amendment. *Jermosen v. Coughlin*, 878 F. Supp. 444, 451 (N.D.N.Y. 1995)(citing *inter alia RAV v. St. Paul*, 505 U.S. 377, 388 (1992)).

Although writing a letter to Mr. Lamy complaining about a smoking policy or about the facility's alleged failure to enforce the law would have been protected, the language in the letter which was interpreted by the hearing officer as a threat of violence was *not protected speech*. A review of the language of the letter supports this interpretation, even though plaintiff seems to allege that he did not intend it as a threat. Plaintiff cannot dispute the words that he included in the letter, since a copy of the letter has been made an exhibit and plaintiff does not dispute that it is his letter.

As quoted above, the letter states that plaintiff would not "be held liable" for "any efforts" that he found necessary to resort to upon being confronted by any inmate who disagreed with him about the smoking policy. At the end of the letter, plaintiff then stated that "unfortunately" it usually took a "serious episode of violence" before officials recognized the "red flags" that "foretold the event." It is not an unreasonable

9

interpretation of the letter to find that plaintiff was implying that he could or would resort to violence if confronted about his beliefs regarding the smoking policy.

Plaintiff was not disciplined for complaining, but rather was disciplined for language in the complaint that was *not* protected speech. Thus, the court finds that plaintiff has not met his burden of showing that the letter in question was protected speech. If the letter is not protected speech, plaintiff's *entire case fails* because Selsky is the only defendant, and the remainder of plaintiff's allegations deal with incidents that flowed from his disciplinary hearing and subsequent confinement. However, in the interest of a complete analysis, the court will proceed further.

### B. Discipline in the Absence of Protected Conduct

Plaintiff's case would be subject to dismissal even if the court were to proceed with the analysis, and find that the activity of writing the letter, without examining the content of the letter, was protected activity. Even assuming that the court were to find that the writing of the letter *alone* were protected conduct, the defendant alleges that plaintiff would have been disciplined notwithstanding that writing letters seeking redress of grievances is protected conduct. As stated above, plaintiff was not disciplined for writing a letter, he was disciplined because the letter was interpreted as a threat. Based on the undisputed content of the letter, defendant has shown that plaintiff would have been disciplined notwithstanding any alleged retaliatory motive because it was reasonable for the hearing officer to interpret the letter in the manner

that he did. Defendant Selsky initially affirmed the guilty finding while reducing the penalty imposed by the hearing officer, and then later reversed the finding. Thus, plaintiff's retaliation claim may be dismissed.

In his response plaintiff argues that the letter he wrote was not a threat, and that his words were taken out of context. Assuming that plaintiff is correct in his assertion, the fact that prison officials may have ***misinterpreted*** his letter does ***not*** make the decision to charge plaintiff, discipline plaintiff, or affirm the decision initially on appeal retaliatory action. Ultimately, plaintiff obtained a reversal of the decision. The fact that the decision was reversed also does not make the initial decision or defendant's initial affirmance retaliatory.

**4.    Religion and Equal Protection**

Plaintiff also alleges that his equal protection rights were violated because he was not allowed to communicate with his family when he found out that his wife had been hospitalized. Additionally, plaintiff alleges that his right to practice his religion was violated because upon his admission to the Special Housing Unit (SHU) in this case, he was made to stand in a "state of undress" while waiting for, and then being interviewed by, a female corrections officer.

Defendant argues that he cannot be held liable for either of these alleged violations because he was not personally involved in either of these incidents. Plaintiff responds by stating that since it was Selsky's affirmance of the disciplinary

11

hearing that caused plaintiff to be moved to SHU in the first place, then Selsky was "personally responsible" for any subsequent violations. This court must disagree. If these alleged violations are to be considered "separate" claims, then defendant Selsky would have to have been "personally involved" in order to be liable for damages resulting from these separate violations.

Personal involvement is a prerequisite to the assessment of damages in civil rights actions. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.), *cert. denied*, 434 U.S. 1087 (1978). The doctrine of respondeat superior is inapplicable to section 1983 claims. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973).

In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved, and thus be subject to individual liability, in a constitutional deprivation. A supervisory official is said to have been personally involved if that official directly participated in the infraction. *Id*. A supervisory official is said to have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id*. Personal involvement of a supervisory official is said to exist if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id*. Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who

caused the unlawful condition or event. *Id*.

Defendant Selsky states that as the person who decided plaintiff's appeal, he had no personal involvement in either the alleged denial of the communication nor did he have any personal involvement in plaintiff's admission to SHU. Plaintiff argues that because Selsky was responsible for affirming the disciplinary finding, he is responsible for violations that allegedly occurred while plaintiff was in or being admitted to SHU, because according to plaintiff, Selsky failed to remedy a wrong after learning about it.

Plaintiff's argument does not have merit. There is no indication that Selsky was aware of either plaintiff's family correspondence or plaintiff's religious objection to the handling of his SHU admission. The "wrongs" that Selsky would have to have known about would have to have been the actual alleged violations, not just the appeal of plaintiff's disciplinary hearing. Selsky certainly could not have remedied the "wrong" that plaintiff alleges occurred when he was allegedly viewed by the female corrections officer since plaintiff's admission to SHU was before Selsky even knew about the appeal. With respect to plaintiff's alleged inability to call his family, again, there is no evidence that Selsky knew of that "wrong" in order to remedy it, even if the officials' conduct did amount to a constitutional violation. Plaintiff cannot translate Selsky's affirmance of the disciplinary finding into knowledge of everything that happened to plaintiff once in SHU.

**5.     Expungement and Parole Denial**

Plaintiff also claims that he was denied parole because plaintiff's records were not expunged until after his appearance before the Parole Board, and were not expunged until long after the order of expungement was issued. The court notes that the order of expungement has been included as Defendant's Ex. H and is dated May 6, 2001, only *three days* after the administrative reversal of his hearing. The order is contained in a Memorandum from Deborah Jarvis, Inmate Records Coordinator, II. Defendant Selsky was one of the named recipients of the memorandum. If as plaintiff states, the records were not properly expunged pursuant to that order,[3] there is no indication that defendant Selsky was responsible for the error.

Defendant Selsky was also not personally involved in the denial of plaintiff's parole. Plaintiff alleges that he was denied parole *as a result* of the disciplinary finding because plaintiff appeared before the Parole Board prior to the May 3, 2002 administrative reversal. Plaintiff challenged the denial of his parole in an Article 78 proceeding in the Albany County Court. Defendant's Ex. I. Plaintiff challenged the decision on various bases, including the claim that one of his disciplinary hearings had subsequently been reversed and expunged after plaintiff's initial appearance before the Parole Board. However, at the end of the County Court's decision, the Judge

---

[3] Plaintiff alleges that as of October of 2002, his records had not been expunged, which apparently caused him to be maintained at the Clinton "Hub". Amended Complaint at p.5. Plaintiff alleges that the Clinton "Hub" was far for his family to travel.

14

specifically stated that the expungement of one infraction would be "insufficient to warrant the petitioner's release on parole-*when considering all of the other factors relied upon by the Parole Board in denying petitioner's discretionary parole release*." *Id.* at p.5.

It is clear from the County Court's decision that this particular disciplinary infraction did not result in the denial of plaintiff's parole since there were other factors upon which the Parole Board relied. The court also noted that plaintiff had *five* disciplinary infractions *subsequent to his appearance* before the Board.

Under the *Rooker-Feldman* Doctrine, a federal court lacks jurisdiction over any claims that are "inextricably intertwined" with a state court's determination in a judicial proceeding if it would be barred by the principles of issue preclusion or collateral estoppel. *Moccio v. New York State Office of Court Administration*, 95 F.3d 195, 199-200 (2d Cir. 1996). In *Colon v. Coughlin*, 58 F.3d 865, 869-70 (2d Cir. 1995), the Second Circuit stated that issue preclusion may occur in Federal Court when the issue in question was actually and necessarily decided in a prior proceeding, and the party against whom preclusion is sought had a full and fair opportunity to litigate the issue.

Plaintiff raised the issue of the reversal of his disciplinary hearing in his Article 78 proceeding as a reason for the court to reverse the Parole Board's denial of parole. Plaintiff argues in this case, that the issue decided in the County Court was different

than the issue in Federal Court. Plaintiff argues in his response to the summary judgment motion that the issue in County Court was whether the Parole Board's decision to deny plaintiff's release was arbitrary and capricious in light of the reversal of plaintiff's disciplinary hearing, while the issue in this case is whether defendant Selsky deprived plaintiff of a "due process" interest in a parole decision "untainted" by a disciplinary infraction that the defendant could have, but "refused" to reverse prior to plaintiff's parole hearing.

Regardless of how plaintiff chooses to characterize the County Court decision, the first issue is whether the Parole Board's decision was influenced by plaintiff's disciplinary hearing. The County Court finding in question is not whether the disciplinary hearing was considered in the first place, but whether parole would have been denied notwithstanding the disciplinary finding. Even if plaintiff's disciplinary infraction was considered by the Parole Board in its decision to deny parole, plaintiff had the opportunity to appeal. Plaintiff did appeal, arguing that the decision had been reversed after the Parole Board's finding. The County Court *clearly found* that the reversal did not warrant a change in the decision, thus, plaintiff's parole would have been denied, notwithstanding the allegedly unconstitutional "retaliatory" action by defendant Selsky.[4]

---

[4] The court would also point out that defendant Selsky did not "refuse" to reverse the disciplinary finding. He first affirmed the finding, but then Selsky reversed the disciplinary finding. The reversal happened to occur after plaintiff's appearance before the Parole Board and after plaintiff

Thus, even if plaintiff characterizes the issue in this case as whether defendant Selsky deprived plaintiff of a "due process" right in a parole decision "untainted" by this allegedly unconstitutional disciplinary decision, that issue is resolved since the County Court found that plaintiff's parole would have been denied notwithstanding the reversal of the decision.

The issue of whether plaintiff would have been denied parole without the allegedly retaliatory disciplinary finding has certainly been decided adversely to plaintiff in County Court. Plaintiff had a full and fair opportunity to litigate that issue in his Article 78 proceeding. Thus, plaintiff cannot show a causal connection between any action by Selsky, and the denial of his parole. Thus, not only was defendant Selsky not ***personally involved*** in the decision to deny plaintiff parole, but it is clear that plaintiff's parole was not denied ***as the result*** of any action, proper or otherwise, taken by defendant Selsky.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that plaintiff's motion for summary judgment (Dkt. No. 21) be **DENIED**, and it is further

**RECOMMENDED**, that defendant's cross-motion for summary judgment (Dkt. No. 29) be **GRANTED**, and the amended complaint (Dkt. No. 15) be **DISMISSED IN ITS ENTIRETY.**

---

filed his Article 78 proceeding challenging the disciplinary finding itself.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: June 16, 2005

                                                Hon. Gustave J. DiBianco
                                                U.S. Magistrate Judge